IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARY ALSTON, KEVIN COLLIER, | : | CIVIL ACTION |
| and BRAD AUGUNAS, | : | |
| | : | |
| Plaintiffs, | : | NO. 07-3508 |
| | : | |
| v. | : | |
| | : | |
| COUNTRYWIDE FINANCIAL | : | |
| CORPORATION, COUNTRYWIDE | : | |
| HOME LOANS, INC., and BALBOA | : | |
| REINSURANCE COMPANY, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

Giles, J.                                                    September 29, 2008

Before the court is Defendants' Motion to Dismiss Plaintiffs' First Amended Class

Action Complaint (Doc. No. 8),[1] Plaintiff's Response in Opposition (Doc. No. 14), and

Defendants' Reply (Doc. No. 15).  Plaintiffs bring this prospective class action suit on behalf of

themselves and all others similarly situated, alleging violations of the Real Estate Settlement

Procedures Act of 1974 ("RESPA").  For the reasons that follow, Defendants' Motion to Dismiss

is granted.

**INTRODUCTION**

Plaintiffs Mary Alston, Kevin Collier, and Brad Augunas claim that Defendants

---

[1] All docket numbers refer to this court's docket unless marked "C.D. Cal." for the docket
in the Central District of California.

Countrywide Financial Corporation and Countrywide Home Loans, Inc. (collectively

"Countrywide") and Balboa Reinsurance Company ("Balboa") violated Section 8 of RESPA, 12

U.S.C. § 2607, in connection with the mortgage insurance placed on their loans.  They allege that

their private mortgage insurance policies are subject to captive reinsurance arrangements with

Balboa, an affiliate and subsidiary of Countrywide.  (1st Am. Compl. ¶¶ 10-14, 89.)  They allege

that, pursuant to the captive reinsurance arrangements, the primary insurer cedes a percentage of

the mortgage insurance premiums paid by borrowers to Balboa in exchange for assuming a

portion of the primary insurer's risk, but that the risk assumed by Balboa is not commensurate

with the premiums that it receives.  (Id. ¶¶ 60-61.)  According to Plaintiffs, these allegedly

excessive reinsurance premiums are disguised kickbacks paid to Countrywide through the

captive reinsurance arrangements in exchange for the referral of its primary mortgage business.

(Id. ¶¶ 66-67.)  Plaintiffs allege that the millions of dollars in premiums accepted by Balboa were

not for services actually furnished or performed or exceeded the value of any such services.  (Id.

¶ 87.)  As a result of the alleged kickbacks, Plaintiffs assert that their monthly mortgage

insurance premiums were artificially inflated.  (Id. ¶ 68, 91.)  They further claim that, even if they

were not overcharged for mortgage insurance, they were entitled under RESPA to purchase

settlement services from providers that did not participate in unlawful kickback schemes and thus

are entitled to statutory damages.  (Id. ¶¶ 92-93.)

## FACTS

The court recites the facts in the light most favorable to Plaintiffs.  Each of the three

named plaintiffs resides in Pennsylvania and obtained a residential mortgage loan from

Countrywide.  (1st Am. Compl. ¶¶ 10-11, 14.)  Ms. Alston obtained her loan in April 2005, Mr.

Collier obtained his loan in February 2006, and Mr. Augunas obtained his loan in June 2006.
(Id.)  Each plaintiff obtained a loan with a down payment of less than 20% and was required to
pay for private mortgage insurance from Balboa, Countrywide's captive reinsurer.  (Id. ¶¶ 10-11,
14, 17.)   Under Countrywide's captive reinsurance arrangements, the primary insurer pays
Balboa a percentage of the premiums paid by borrowers on a particular pool of loans, and, in
return, Balboa agrees to assume a portion of the insurer's risk with respect to the loans involved.
(Id. ¶ 60.)  Since 1999, Balboa has collected over $892 million of reinsurance premiums and has
paid zero losses.  (Id. ¶ 61.)

## PROCEDURAL HISTORY

Plaintiffs filed their original Complaint in this matter on December 22, 2006, in the
Central District of California (Case No. 06-cv-8174).  (C.D. Cal. Doc. No. 1).  On April 3, 2007,
Plaintiffs filed their First Amended Class Action Complaint (C.D. Cal. Doc. No. 17).  On May 3,
2007, Defendants' filed a Motion to Dismiss the Claims of the Pennsylvania Plaintiffs, (C.D.
Cal. Doc. No. 31) and a Motion to Dismiss the Claims of the California Plaintiffs, (C.D. Cal.
Doc. No. 31).  Plaintiffs filed a Response and Defendants filed a Reply to the Motion to Dismiss
the Pennsylvania Plaintiffs.  (C.D. Cal. Doc. Nos. 45 & 54.)  On August 9, 2008, Plaintiff
voluntarily dismissed the California Plaintiffs.  (C.D. Cal. Doc. No. 51.)

On August 13, 2007, the remaining claims in the matter were transferred to this court.
(C.D. Cal. Doc. No. 53.  See also Doc. No. 1.)  This court ordered revised briefing on the motion
to dismiss.  (Doc. No. 7.)  On November 9, 2007, Defendants filed their Motion to Dismiss
Plaintiffs' First Amended Class Action Complaint (Doc. No. 8).  On December 7, 2007,
Plaintiffs filed a Response in Opposition, (Doc. No. 14), and on December 14, 2007,  Defendants

filed a Reply brief, (Doc. No. 15).  Oral argument was held on February 29, 2008.

On February 15, 2008, the court entered as an Order the parties' stipulation to stay the deadline for filing of a motion for class certification pending the resolution of Defendants' motion to dismiss.  (Doc. No. 37.)

On February 28, 2008, Plaintiffs filed a Notice of Supplemental Authority.  (Doc. No. 28.)  In that notice, Plaintiffs argue that <u>DeVito v. Aetna, Inc.</u>, 536 F. Supp. 2d 523 (D.N.J. 2008), supports their position that the Burford abstention doctrine should not apply to Plaintiffs' claims.

On July 2, 2008, Plaintiffs filed a Second Notice of Supplemental Authority.  (Doc. No. 31.)  In that second notice, Plaintiffs argue that <u>Alexander v. Washington Mut., Inc.</u>, No. 07-4426, 2008 WL 2600323 (E.D. Pa., June 30, 2008), supports their claims.  On July 18, 2008, Defendants filed a Reply to Plaintiffs' [Second] Notice of Supplemental Authority (Doc. No. 32). In that Reply, Defendants rebutted Plaintiff's characterization of <u>Alexander</u>.  On August 7, 2008, Plaintiffs filed a Motion to Strike Defendants' Reply to Plaintiffs' Notice of Supplemental Authority or, in the Alternative, to Permit a Brief Response Thereto (Doc. No. 37).  Plaintiffs' Motion to Strike is denied.

## STANDARD OF REVIEW

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'"  <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 233 (3d Cir. 2008) (quoting <u>Pinker v. Roche Holdings Ltd.</u>, 292 F.3d 361, 374 n. 7 (3d Cir. 2002)) (stating that this statement of the

Rule 12(b)(6) standard remains acceptable following the U.S. Supreme Court's decision in <u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955 (2007); <u>see id.</u> at 231 (stating that <u>Twombly</u> does not undermine the principle that the court must accept all of plaintiff's allegations as true and draw all reasonable inferences therefrom).  To withstand a motion to dismiss under Rule 12(b)(6), "'[f]actual allegations must be enough to raise a right to relief above the speculative level."  <u>Id.</u> at 234 (quoting <u>Twombly</u>, 127 S.Ct. at 1965).  Thus, "'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element."  <u>Id.</u> (quoting <u>Twombly</u>, 127 S.Ct. at 1965); <u>see</u> <u>Wilkerson v. New Media Tech. Charter Sch., Inc.</u>, 522 F.3d 315, 321 (3d Cir. 2008) (following <u>Phillips</u>).  This standard "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element."  <u>Phillips</u>, 515 F.3d at 234 (quoting <u>Twombly</u>, 127 S.Ct. at 1965) (quotations omitted).

## DISCUSSION

Plaintiff's First Amended Complaint contains one count: violation of 12 U.S.C. § 2607.  In that count, Plaintiffs claim that Defendants have violated RESPA's anti-kickback provision, 12 U.S.C. § 2607(a), and RESPA's prohibition of fee splitting for settlement charges other than for services actually rendered, 12 U.S.C. § 2607(b).

In their Motion to Dismiss, Defendants argue that (1) Plaintiffs' claims should be dismissed pursuant to the <u>Burford</u> abstention doctrine; (2) Plaintiffs' claims are barred by the filed rate doctrine; and (3) Plaintiff Mary Alston's claims are barred by the statute of limitations.

## I.    RESPA, Generally

Congress passed the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 <u>et seq.</u>, to inform home buyers about the costs and nature of the settlement process and to protect home

buyers from unnecessarily high settlement charges caused by certain abusive practices.  12

U.S.C. § 2601(a).  Congress intended that RESPA would result, <u>inter alia</u>, "in the elimination of

kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement

services." 12 U.S.C. § 2601(b)(2).

      Section 2607 of RESPA provides, in relevant part,

> (a) Business referrals
>
> No person[2] shall give and no person shall accept any fee, kickback,
> or thing of value pursuant to any agreement or understanding, oral
> or otherwise, that business incident to or a part of a real estate
> settlement service[3] involving a federally related mortgage loan
> shall be referred to any person.
>
> (b) Splitting charges
>
> No person shall give and no person shall accept any portion, split,
> or percentage of any charge made or received for the rendering of a
> real estate settlement service in connection with a transaction
> involving a federally related mortgage loan other than for services
> actually performed.

12 U.S.C. § 2607.  The statute also provides for statutory damages:

> (1) Any person or persons who violate the provisions of this
> section shall be fined not more than $10,000 or imprisoned for not
> more than one year, or both.

_____

[2] Under RESPA, the term "person" includes individuals, corporations, associations, partnerships, and trusts.  12 U.S.C. § 2602(5).

[3] Under RESPA, "the term 'settlement services' includes any service provided in connection with a real estate settlement including, but not limited to, the following: title searches, title examinations, the provision of title certificates, title insurance, services rendered by an attorney, the preparation of documents, property surveys, the rendering of credit reports or appraisals, pest and fungus inspections, services rendered by a real estate agent or broker, the origination of a federally related mortgage loan (including, but not limited to, the taking of loan applications, loan processing, and the underwriting and funding of loans), and the handling of the processing, and closing or settlement." 12 U.S.C. § 2602(3).

> (2) Any person or persons who violate the prohibitions or
> limitations of this section shall be jointly and severally liable to the
> person or persons charged for the settlement service involved in the
> violation in an amount equal to three times the amount of any
> charge paid for such settlement service.

12 U.S.C. § 2607(d).  The Secretary of Housing and Urban Development and certain state

officials are statutorily enabled to enjoin violations of RESPA.  12 U.S.C. § 2607(d)(4).  RESPA

also provides a private cause of action.  12 U.S.C. § 2607(d)(5).[4]

## II.    __Burford__ Abstention

Defendants argue that Plaintiffs' claims should be dismissed pursuant to the __Burford__

abstention doctrine.  __See__ __Burford v. Sun Oil Co.__, 319 U.S. 315 (1943).  "In __Burford__, the Supreme

Court stated that a federal court should refuse to exercise its jurisdiction in a manner that would

interfere with a state's efforts to regulate an area of law in which state interests predominate and

in which adequate and timely state review of the regulatory scheme is available." __Chiropractic__

__America v. Lavecchia__, 180 F.3d 99, 104 (3d Cir. 1999) (citing __Burford__, 319 U.S. at 332-334).

__See also__ __Heritage Farms, Inc. v. Solebury Twp.__, 671 F.2d 743, 746 (3d Cir. 1982) ("__Burford__

abstention is appropriate where a difficult question of state law is presented which involves

important state policies or administrative concerns.") According to the Supreme Court,

> Where timely and adequate state-court review is available, a
> federal court __sitting in equity__ must decline to interfere with the
> proceedings or orders of state administrative agencies: (1) when
> there are "difficult questions of state law bearing on policy
> problems of substantial public import whose importance transcends
> the result in the case then at bar"; or (2) where the "exercise of

---

[4] 12 U.S.C. § 2607(d)(5) provides that "[i]n any private action brought pursuant to this
subsection, the court may award to the prevailing party the court costs of the action together with
reasonable attorneys fees."

> federal review of the question in a case and in similar cases would
> be disruptive of state efforts to establish a coherent policy with
> respect to a matter of substantial public concern."

New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans, 491 U.S. 350, 361 (1989)

(emphasis added) (quoting Colorado River Water Conservation Dist. v. United States, 424 U.S.

800, 814 (1976)).  The third circuit has acknowledges that Burford abstention is only appropriate

in cases seeking equitable relief.  See Keeley v. Loomis Fargo & Co., 183 F.3d 257, 273 n. 13

(3d Cir. 1999) (holding that Burford abstention is inappropriate in a claim for damages, not

equitable relief).  See also id. (declining to invoke Burford abstention in a case where a state

regulation that affects all members of a class generally, and stating that because "[c]ases

implicating Burford abstention involve state orders against an individual party that a

federal-court plaintiff seeks to enjoin.")  Here, Plaintiffs seek monetary damages in addition to

equitable relief.  Therefore, Burford abstention is inappropriate.

**III.     The Filed Rate Doctrine and Standing**

Under the filed rate doctrine, where regulated companies are required by federal or state

law to file proposed rates or charges with a governing regulatory agency any rate approved by

that agency "is per se reasonable and unassailable in judicial proceedings brought by ratepayers."

Wegoland Ltd. v. NYNEX Corp., 27 F.3d 17, 18 (2d Cir. 1994).  See also AT&T v. Cent. Off.

Tel., Inc., 524 U.S. 214, 226 (1998); AT&T Corp. v. JMC Telecom, LLC, 470 F.3d 525, 532 (3d

Cir. 2006).  "There is no fraud exception to the filed rate doctrine."  AT&T Corp. v. JMC

Telecom, LLC, 470 F.3d at 535.

In Pennsylvania, mortgage insurance rates must be filed with the Commonwealth's

Department of Insurance.  40 Pa. Stat. § 710-5(a).  Regulation by the Commonwealth is intended

to ensure that the rates are "not excessive, inadequate or unfairly discriminatory." 40 Pa. Stat. §
710-5(c)(2)(I).

Plaintiffs allege that Countrywide's captive reinsurance arrangement "keep[s] premiums
for private mortgage insurance artificially inflated because a percentage of borrower's premiums
are not actually being paid to cover actual risk, but are simply funding illegal kickbacks to
lenders [and] . . . [a]s a result, private mortgage insurance premiums incorporate the payment of
such kickbacks – to the detriment of consumers. " (1ˢᵗ Am. Compl. ¶¶ 68-69.)  To the extent that
Plaintiffs claim they have paid an artificially inflated rate mortgage insurance rate, Plaintiffs have
no standing to bring such a claim.  To establish Article III standing, Plaintiffs must show the
court they have suffered an actual or threatened injury.  Lujan v. Defenders of Wildlife, 504 U.S.
555, 560 (1992).  Here, the rates paid by the Plaintiffs for private mortgage insurance were filed
with the Pennsylvania Department of Insurance.  Plaintiffs paid the only legal rate they could
have paid for mortgage insurance in Pennsylvania.  Regardless of how Defendants may have
distributed the mortgage insurance premiums Plaintiffs paid, the mortgage insurance rates that
Plaintiffs paid are per se reasonable in Pennsylvania.  See Wegoland, 27 F.3d at 18.  See also
Morales v. Attorneys' Title Ins. Fund, Inc., 983 F. Supp. 1418, 1428-29 (S.D. Fla. 1997)
(dismissing a RESPA claim for lack of jurisdiction because "despite [the plaintiffs']
protestations, the plaintiffs' claims are nothing more than a challenge to Florida's rate
structure.").

However, Plaintiffs' First Amended Complaint does not directly challenge the primary
mortgage insurance rates they paid.  Plaintiffs do not seek a refund of the mortgage insurance
premiums they paid or a new rate structure for their mortgage insurance payments from this point

forward.  They seek declaratory relief and statutory damages for Defendants' alleged violations of RESPA.  Plaintiffs' argue that their claims of RESPA violations by Defendants must be considered independently from their allegation that they have paid an artificially inflated rate.  In other words, Plaintiffs contend that they have standing to sue for a RESPA violation even if Defendants' alleged kickback arrangement had not increased their mortgage insurance rates. (See Pls.' Opp'n to Defs.' Mot. to Dismiss at 9.)  There is considerable disagreement among federal district courts that have addressed this very issue.  Compare Mullinax v. Radian Guar., Inc., 311 F. Supp. 2d 474 (M.D.N.C. 2004) (dismissing for lack of standing a RESPA claim without a contestable overcharge), and Moore v. Radian Group, Inc., 233 F. Supp. 2d 819 (E.D. Tex. 2002) (same holding) with Kahrer v. Ameriquest Mort. Co., 418 F. Supp. 2d 748, 756 (W.D. Pa. 2006) ("RESPA gives consumers the right, enforceable by a private right of action for statutory damages, to purchase settlement services from companies that have not participated in a kickback scheme.") and Alexander v. Washington Mut., Inc., No. 07-4426, 2008 WL 2600323 (E.D. Pa., June 30, 2008) (finding that plaintiffs have standing to bring a RESPA claim where they have paid a filed rate).  Taking as true Plaintiffs' allegation that Countrywide and Balboa engaged in an illegal mortgage insurance kickback or fee-splitting scheme in violation of RESPA, and taking as true Plaintiff's allegations that they borrowed money from Countrywide and were required to pay mortgage insurance, Plaintiffs have pled a violation of RESPA.  The question for this court is whether a claim of such a violation, not having resulted in an inflated rate paid by Plaintiffs, can be brought by private individuals.  The court finds it cannot.

As one court has observed, "The damages provision of Section 2607(d)(2) is the focal point of the standing analysis."  Carter v. Welles-Bowen Realty, Inc., 493 F. Supp. 2d 921, 924

(N.D. Ohio 2007).  According to the damages provision,

> [a]ny person or persons who violate the prohibitions or limitations
> of this section shall be jointly and severally liable to the person or
> persons charged for the settlement service involved in the violation
> in an amount equal to three times the amount of any charge paid
> for such settlement service.

12 U.S.C. 2607(d)(2).  Clearly, the statute entitles persons who paid for any settlement service in

violation of RESPA to receive damages equal to three times the amount of any charge paid for

settlement services in violation of the statute.  However, the purpose of RESPA is to protect

individuals "from unnecessarily high settlement charges."   12 U.S.C. § 2601; Carter, 493 F.

Supp. 2d at 927.  Here, where Plaintiffs have not been overcharged because of any illegal

kickback or fee splitting, the court does not construe RESPA's damages provision as authorizing

Plaintiffs to sue for damages.  Cf. Carter, 492 F. Supp. 2d. at 924-27 (discussing the legislative

history of RESPA and concluding that plaintiffs do not satisfy the injury-in-fact requirement for

Article III standing where they have not been overcharged for settlement services); Mullinax v.

Radian Guar., Inc., 311 F. Supp. 2d 474, 483 (M.D.N.C. 2004) ("absent an overcharge that is

contestable by the plaintiff, a plaintiff does not have standing to sue under RESPA").

## CONCLUSION

        Having found that Plaintiffs do not have standing to invoke this court's jurisdiction,

Plaintiffs' First Amended Complaint is dismissed without prejudice for lack of jurisdiction.  An

appropriate Order follows.